Harold Baer, J.
Plaintiff and defendant move for summary judgment in an action brought by the plaintiff on an insurance policy.
The plaintiff and defendant entered into a contract of insurance -prior to 'May 7, 1965. That policy contained coverage for physical damage to plaintiff’s property and iby an endorsement dated April 7,1967 coverage was extended to the property which is (he subject matter of this lawsuit.
The plaintiff, a manufacturer of candies and other food products, purchased and caused to be .stored in a warehouse in Port Newark, New 'Jersey, some 3,200 100-pound bags of sugar. The purchase was made from Olavarria & Co. and was evidenced by an invoice from Olavarria, dated September 30, 1966 and a warehouse receipt from the L & F Warehousing & Distributing Corp. This sugar was part of a larger order of 6,000 100-pound bags, 12,800 of which had already been delivered to the plaintiff. At the time of the transfer to the plaintiff of the 3,200 bags of sugar, it -appears that Olavarria alone had at least 75,026 100-pound bags of sugar at the warehouse.
On December 6,1966 the plaintiff withdrew 400 bags of sugar and -a like amount on December 22, 1966 and January 5, 1967. Throughout this period of time plaintiff paid for the warehousing of the sugar. The warehousing charges confirm the withdrawals by -the plaintiff, and the balance of the sugar on hand as late as February 10,1967. On June 14, 1967, the plaintiff requested that its trucker pick up sugar at the L & F Warehouse and on that day discovered the warehouse was padlocked. Subsequently the plaintiff ascertained that L & F Warehousing had been ¡dispossessed on April 14, 1967 and at that time there were only 1-8 bags -of .sugar on hand. These facts are conceded, as is the fact that to date no one can satisfactorily explain the mysterious disappearance of over '200,000 pounds of sugar. No *487 one is prepared ito testify that they saw the sugar, 'whether it was segregated or marked in any way or that aside from the documentation it ever even existed.
The defendant contends that the first cause of action must be dismissed for the following reasons:
First — the plaintiff has the burden of showing that the bags of sugar were actually in existence at the time it acquired the sugar, and is ¡unable to do so.
Second — plaintiff has no insurable interest inasmuch as the bags were .unidentifiable or not actually separated from the mass of sugar.
Third — the policy excludes the infidelity and dishonesty of persons to whom property may be entrusted, and since the property was entrusted to a warehouseman the failure to return constituted conversion as a matter of law.
Fourth — there has not been a showing of an actual fortuitous loss.
The defendant contends that the second cause of action which is based on a fraudulent warehouse receipt, must be dismissed because the policy covers only the receipt of goods while in transit.
With respect ito the second cause of action it is clear that a dismissal is warranted. The second cause of action is directed to the fraudulent receipts aspect of the policy. But a reading of that section reveals that such coverage is only extended to receipts relating to property in transit, and specifically to bills of lading or other shipping or .receiving receipts. The property in the instant case was not in transit and clearly a fraudulent warehouse receipt was not within the coverage of the policy.
With respect to the first cause of action, the defendant contends that ¡the cause of action must ,be dismissed because the plaintiff has no personal knowledge of the existence of the goods and the goods were never 'separated .from a larger mass and thus plaintiff did not have an insurable interest in the goods and cannot recover.
The existence of these goods cannot seriously be disputed. Plaintiff has submitted the sellers ’ invoices, the warehouse bills for storage which were paid, the warehouse receipts, the checks issued to pay for the purchase of the goods and the fact that it subsequently withdrew 1,200 100-pound bags of sugar on the amount in storage as evidence of the goods. In opposition the defendant submits nothing to disprove the validity of any of the proof submitted, other than the mere statement that perhaps the goods did not exist.
*488 Of greater importance is the question of the consequences, if any, of the failure of the warehouseman to segregate the sugar. Assuming arguendo that the warehouseman failed to segregate the sugar, and we note that there is no conclusive proof as to this point, it is this court’s opinion that such-failure does not defeat .the plaintiff’s right to recover.
Section 2-501 of Uniform Commercial Code provides:
“ (1) iThe (buyer obtains a special property and an insurance interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them. ¡Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs.
“ (a) when the contract is made if it is for the sale of goods already existing and identified. ”
The Official Comment then explains (McKinney’s Cons. Laws of N. Y., iBook .621/2, Uniform Commercial Code, § 250, p. 408): “ 5. Undivided shares in an identified fungible bulk, such as grain in an elevator or oil in a storage tank, can be sold. The mere making of .the contract with reference to an undivided share in an identified fungible bulk is enough under subsection (a) to effect an identification if there is no explicit agreement otherwise. ”
The sugar in the instant case falls within the code’s definition of a fungible (Uniform Commercial ¡Code, § .1-201, subd. 17) and indeed it is defendant’s contention that they be considered as fungilbles.
Therefore when delivery was tendered in the manner described under subdivision 4 of section 2-503 of the Uniform Commercial Code the plaintiff acquired an insurable interest in the goods, title to the goods (§ -3 — 401 specifically refers to § 2-501 with respect to the identification of goods) and at the same time it bore the risk of loss with ¡respect to those goods (Uniform Commercial Code, '§ 2-609). Therefore -with respect to the sugar, the failure to segregate is of no consequence and the plaintiff had an insurable interest.
The exclusionary clauses of the defendant’s policy pose a different problem, for little is known about the disappearance of the 200,000 pounds of sugar. The defendant contends that the plaintiff cannot recover, because the disappearance is the result of the dishonesty of the warehouseman and the policy excludes: “ 4(g) loss or damage * * * caused by or arising out of infidelity or any dishonest act on the part of * * * any *489 person or persons to whom the property may have been entrusted”.
Were there .any proof with respect to this point, it could form the basis for a dismissal; however the defendant in marshalling all the evidence of this case submits no proof as to this point, and thus .summary judgment will not lie.
The final question is, under the facts as stated and as conceded by both sides to be the only facts known, is there coverage under the policy; is there a fortuitous loss. This court is of the belief that such a loss is covered.
The policy specifically provides:
“ 3. Perils Insured: this policy insures against all risks of
PHYSICAL LOSS OR DAMAGE TO THE ABOVE DESCRIBED PROPERTY EXCEPT AS HEREINAFTER PROVIDED * ' * *
“ 4. Perils Excluded: This policy does not insure: * * *
“ (f) Loss or damage due to shortage disclosed on taking inventory; or unexplained or mysterious disappearance (except property in the custody of bailees or carriers for ¡hire);” (emphasis supplied).
The only logical construction of this clause is that a mysterious disappearance of property in the custody of a bailee is a covered peril. This contract was drawn by the defendant and as such must be strictly construed against the company. If the terms of the policy are ambiguous then they must be construed in favor of the insured (Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386). Accordingly we hold that the policy afforded coverage under these circumstances.
The parties concede that no further facts will be adduced at trial. The plaintiff has made out a prima facie case, and the peril is covered by this policy. Accordingly and for the reasons set forth, the defendant’s motion for summary judgment is granted with respect to the second .cause of action and plaintiff’s motion for summary judgment is granted with respect to the first cause of action. There is no dispute as to the damages involved, and plaintiff may enter judgment in the amount of $19,120.